Lujan v. United States                    CV-04-247-SM  09/14/04

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Alberto Lujan,
      Petitioner

      v.                                    Civil No. 04-247-SM
                                            Opinion No. 2004 DNH 135
United States of America,
      Respondent


                          **O R D E R**


      After negotiating an agreement with the government,

petitioner, Alberto Lujan, pled guilty to conspiracy to possess

with intent to distribute and to distribute marijuana, in

violation of 21 U.S.C. §§ 841(a)(1) and 846.  He was sentenced to

imprisonment for 292 months, followed by five years of supervised

release.  He was also fined in the amount of $1,000,000.00.  That

sentence was affirmed on appeal.  See United States v. Lujan, 324

F.3d 27 (1st Cir. 2003).  He now seeks habeas corpus relief,

asserting that his trial counsel provided constitutionally

deficient representation at sentencing.  See generally 28 U.S.C.

§ 2255.  Accordingly, he petitions the court to vacate his

original sentence and resentence him.

The government opposes Lujan's requested relief, but its memorandum of law is not responsive to the issues petitioner raises. Indeed, the government's studied avoidance of the issues actually raised by Lujan serves only to suggest their merit. As this has become a recurring circumstance in Section 2255 cases, no further briefing would likely prove helpful in this case. The court will proceed directly to resolution of the claims raised.

## Background

Lujan alleges that he was denied effective assistance of counsel at sentencing. He says that had he been afforded adequate representation he would have obtained a downward departure consistent with his negotiated plea agreement, and his sentence would be some six years less than it is. He also claims that his trial counsel failed to meaningfully review the presentence investigation report ("PSR") with him, resulting in an improper calculation of drug weight attributable to him under the Sentencing Guidelines, an undeserved upward adjustment for obstruction of justice, and an erroneous imposition of a $1,000,000 fine. Only his first claim has merit.

## Standard of Review

To prevail on an ineffective assistance of counsel claim, a petitioner must "show, by a preponderance of the evidence, that [his or her] trial counsel's conduct fell below the standard of reasonably effective assistance <u>and</u> that counsel's errors prejudiced the defense." <u>Gonzalez-Soberal v. United States</u>, 244 F.3d 273, 277 (1st Cir. 2001) (emphasis in original) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). <u>See also</u> <u>Cofske v. United States</u>, 290 F.3d 437 (1st Cir. 2002). In assessing the quality of trial counsel's representation, the court employs a highly deferential standard of review and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689 (citation and internal quotation marks omitted). In other words, to satisfy the first prong of the <u>Strickland</u> test, a petitioner must demonstrate that his or her attorney made errors that were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Smullen v.</u>

3

United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting Strickland, 466 U.S. at 687)).

To satisfy the second prong of the Strickland test, a petitioner must show "actual prejudice."  As the court of appeals has observed, "prejudice exists in a particular case when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Gonzalez-Soberal, 244 F.3d at 278 (citation and internal quotation marks omitted).  A reasonable probability is "one sufficient to undermine confidence in the outcome."  Id. (citation omitted).

## Discussion

I.  Downward Departure under U.S.S.G. § 5K2.0

Lujan's plea agreement with the government provided, in pertinent part:

> Pursuant to U.S.S.G. § 5K2.0, defendant, at the time of
> his sentencing, will request that the Court grant a
> downward departure (from defendant's adjusted U.S.S.G.
> guideline range) based upon a significant medical
> condition which will result in a reduction of
> defendant's life expectancy.  Defendant agrees,

4

> however, that such request <u>will not seek a departure below a term of eighteen (18) years</u> of imprisonment.
>
> <u>The United States, in turn, agrees that it will not oppose defendant's request if defendant provides the United States with the written opinion of a physician, supported by competent and sufficient medical records, which unequivocally states that defendant's medical condition will result in a significant reduction of his life expectancy</u>.
>
> Defendant agrees that if he fails to provide such information, or if such information fails to establish that defendant's medical condition will result in a significant reduction of his life expectancy, the United States will remain free to oppose the request for a downward departure.

Plea agreement at para. 8(B) (emphasis supplied).

Notwithstanding the availability of two treating physicians who were ready and willing to issue written medical opinions unequivocally stating that Lujan's medical condition would result in a significant reduction of his life expectancy, trial counsel failed to obtain and present such statements to the government prior to sentencing. <u>See</u> Transcript of Sentencing Hearing at 13 (Defense Counsel: "To be perfectly candid with the Court, I expected that by today I would have had some evidence that was just a wee bit stronger than that which I do have . . .."). Accordingly, absent the requisite medical opinion and record

5

support, the government was free to, and did, oppose Lujan's motion for a downward departure. The government offered the testimony of Dr. Allan Sheinbaum, who credibly testified that Lujan's medical condition was not likely to result in a shortened life expectancy, at least not based upon the limited medical records that were available to him.

Given the evidence before it, the court acknowledged its authority to depart downward on the grounds asserted (medical condition), but declined to exercise its discretion to do so. Accepting the government's recommendation that Lujan be sentenced at the low end of the applicable Sentencing Guideline range, the court imposed a term of imprisonment of 292 months (Criminal History Category II, Level 39).

In his habeas petition, Lujan demonstrates that, had trial counsel simply asked, his treating physicians (Dr. Karsch and Dr. Hirsch) would have provided written medical opinions that met the requirements of Lujan's plea agreement - that is, medical opinions unequivocally declaring that Lujan's medical condition will result in a significant reduction in his life expectancy.

6

See Exhibit A to habeas petition, Letter from Dr. Daniel Karsch ("His medical conditions will result in a significant reduction of his life expectancy."); Exhibit B, letter from Dr. Robert Hirsch ("Any of these medical condition[s] will result in a significant reduction of his life expectancy."). Those opinions would also likely have been supported by records (presumably "competent and sufficient medical records") from the physicians' files, as required by the plea agreement. Trial counsel failed to obtain such letters and records. As a direct consequence of that failure, the government was free to oppose what turned out to be a rather weak motion for downward departure. The court denied that motion.

Lujan asserts that he was substantially and demonstrably prejudiced by his counsel's failure to obtain the medical opinion letters and records prior to sentencing (or, at a minimum, by his failure to seek a continuance of sentencing until he had obtained those documents). Had he received constitutionally adequate representation, Lujan says his attorney would have obtained those letters and documents, his motion for downward departure would have been stronger and, significantly, it would have been

7

unopposed by the government.  Given all that, says Lujan, the court likely would have granted the motion and sentenced him to the agreed upon departure minimum of 18 years' imprisonment.  The court agrees, with one minor reservation.

Trial counsel's failure to obtain and present the government with the contemplated medical opinion letters and records prior to sentencing, which were readily available and which likely would have met the specific requirements of Lujan's plea agreement, constitutes ineffective assistance of counsel.  Counsel's failure to adequately seek those medical opinion letters and records fell below the standard reasonably effective counsel is expected to meet, and that failure substantially prejudiced petitioner.  Had counsel obtained those documents and presented them to the government, it probably would have been bound not to oppose Lujan's motion for a downward departure to 18 years' imprisonment.  Under those circumstances, the court would have likely acquiesced in the unopposed departure motion and imposed a term of 18 years in prison.

But, that having been said, it is not clear from the record whether, under the plea agreement, the government would (or must) be satisfied by the opinions and supporting records that defense counsel could have obtained. What Lujan has filed is enough to establish that the requisite opinions were readily available, but it is not so apparent that "competent and sufficient medical records" supporting those opinions are available. As Lujan was entitled to adequate legal representation and the benefit of his plea bargain, so, too, is the government entitled to the benefit of its bargain - presentation of the described opinions and supporting records before sentencing, and an opportunity either to agree not to oppose the contemplated downward departure motion, or to contest the adequacy of what is provided and assert its contingent right, under the agreement, to oppose the motion. Due to counsel's deficient performance, neither Lujan nor the government obtained the benefits of the bargain struck.

II.  Drug Weight Attributable to Petitioner.

Next, petitioner says his counsel provided constitutionally deficient representation insofar as he failed to meaningfully review with Lujan the substance of the PSR. As a result, says

9

Lujan, the drug weight attributed to him at sentencing (in excess of 1,000 kilograms) was inaccurate and materially affected his sentence in an adverse way.[1]

This claim requires little discussion. In his plea agreement, Lujan specifically stipulated to the drug weight attributable to him.

> By entering a guilty plea to the United States'
> Superceding Information, defendant agrees and
> stipulates to waive any and all claims arising under
> Apprendi v. New Jersey, 530 U.S. 466 (2000). Defendant
> further agrees and stipulates that the United States
> would (and could) prove beyond a reasonable doubt, if
> defendant proceeded to trial, that during the course of
> the conspiracy, defendant was responsible for the
> distribution of in excess of 1000 kilograms of a
> mixture or substance containing a detectable amount of
> marijuana, thereby subjecting defendant to a maximum
> statutory term of life imprisonment.

Plea agreement at para. 2 (emphasis supplied). Lujan does not assert that counsel failed to explain the meaning or consequences of the words used in the plea agreement, nor does he claim to

_____

[1]     The PSR notes that the government believes it could prove that Lujan is responsible for more than 100,000 pounds of marijuana. Taking a more conservative approach to that calculation, the PSR concludes that 54,700 pounds (24,811.92 kilograms) are attributable to him - nearly 25 times the amount actually attributed to Lujan at sentencing.

have been unaware that his plea agreement contained such a stipulation.  Indeed, his plea colloquy establishes his knowledge of, and agreement with, the stipulated drug weight.  Accordingly, as to that portion of his habeas petition, he is entitled to no relief.

III. <u>Obstruction of Justice Enhancement</u>.

Lujan's argument with regard to the enhancement for obstruction of justice is not well-developed; it is simply mentioned in passing in a footnote and described as a consequence of counsel's having (allegedly) failed to adequately review with him the contents of the PSR.  Consequently, Lujan has failed to demonstrate how counsel's allegedly deficient representation in that regard caused him to suffer demonstrable harm.

Merely asserting that counsel failed to adequately explain the nuances of the PSR does not entitle Lujan to habeas relief. Instead, Lujan must point to evidence which might establish that: (1) he was unaware that the government was planning to seek an obstruction of justice enhancement; (2) had he been aware of that fact, he would have introduced evidence in opposition; and (3)

11

such evidence likely would have had an impact on the sentence the court actually imposed (i.e., the court likely would not have accepted the proposed obstuction enhancement). He has failed to point to any such evidence. Accordingly, as to his claim with regard to the obstruction of justice enhancement, Lujan is not entitled to habeas relief.

IV. Fine.

Finally, Lujan asserts that his trial counsel's constitutionally deficient representation (i.e., failing to thoroughly review the PSR with him) caused him to incur an unjust fine in the amount of $1,000,000. Again, however, Lujan's argument is not well-developed; like his claim regarding the obstruction of justice enhancement, it is merely referenced in a footnote and described as a consequence of counsel's alleged failure to adequately review with him the contents of the PSR. That claim, too, fails.

Lujan has not demonstrated any actual prejudice stemming from counsel's allegedly deficient representation. The financial statement Lujan filed prior to sentencing was devoid of

12

supporting documents and neither his petition nor his supporting memorandum explains how, at sentencing, he would have proved an inability to pay the fine. See, e.g., United States v. Shea, 211 F.3d 658, 675 (1st Cir. 2000) (noting that the defendant bears the burden of proving an inability to pay).

The evidence before the court at sentencing (which Lujan did not, nor does he now rebut), overwhelmingly suggested that he had the ability to pay the fine imposed. As the court of appeals noted in Lujan's direct appeal:

> [T]he marijuana Lujan distributed in 1991, 42,000 pounds, alone yielded approximately $62,400,000 in revenue, which the probation officer stated was a conservative estimate. Given Lujan's failure to present evidence that he was subject to extensive seizures or that he had no access to possible hidden drug proceeds, the district court could reasonably conclude that this money went somewhere and that Lujan would have access to it upon his release. Moreover, the PSR noted that a confidential informant told police that Lujan owned houses in Arizona, California, and Mexico.

United States v. Lujan, 324 F.3d at 35. Given the fact that a conservative estimate suggests that Lujan's drug distribution enterprise yielded more than $60 million in 1991 alone, and at least the suggestion that he has extensive real estate holdings,

13

he bore a substantial burden to demonstrate his claimed inability to pay the fine actually imposed. Cf. United States v. Shea, 211 F.3d at 675 ("Here, the fact that defendants had stolen more than the amount of their fines and failed to account for a substantial portion of the money is enough for us to sustain the district court. That the defendants denied that they had any money created at best a credibility contest and the court was free to disbelieve the self-interested and general denials offered by the defendants.").

Having failed to point to any evidence that might even suggest an inability to pay, Lujan has failed to demonstrate that he suffered any harm from trial counsel's alleged failure to adequately discuss with him the contents of the PSR. Consequently, he cannot satisfy the second prong of the Strickland analysis - actual prejudice - and, therefore, is not entitled to habeas relief with regard to his claim that he was sentenced to pay an unjust fine.

## Conclusion

Lujan's claims with regard to the drug weight attributed to him, the obstruction of justice enhancement, and the fine are all without merit.  As to those claims, then, his habeas petition is denied.

He has, however, demonstrated that he is entitled to habeas relief with regard to his assertion that he was deprived of his bargained-for opportunity to present a downward departure motion, unopposed by the government, as described in his plea agreement. Even applying a highly deferential standard of review to defense counsel's performance, the court cannot avoid the conclusion that, had counsel made a reasonable effort to obtain the readily available medical opinion letters and supporting records contemplated by the plea agreement, Lujan likely would have been entitled to file an unopposed (and well-supported) departure motion and, as a consequence, likely would have obtained the degree of departure contemplated: 18 years in prison, rather than the nearly 25 years he actually received.  Counsel's performance was not constitutionally adequate; it fell below the standard of

reasonably effective assistance at sentencing and, as a consequence, Lujan was substantially prejudiced.

Lujan's motion for an enlargement of time within which to file a response to the government's objection (document no. 10) is denied as moot. The petition for habeas corpus relief (document no. 1) is granted as follows. Petitioner shall, if he can, present the government with the medical opinions and supporting medical records contemplated by the plea agreement within sixty (60) days of the date of this order. Within thirty (30) days thereafter, the government will notify petitioner and the court of its position with respect to its obligation not to oppose the contemplated departure motion. Further proceedings will be had, as necessary, after the government responds.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 14, 2004

16

cc:  Ronald L. Abramson, Esq.
     Randy Olen, Esq.
     Peter E. Papps, Esq.